LESLIE J. HUGHES (Colo. Bar No. 15043)
Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294
Telephone: (303) 844-1086
Email: HughesLJ@sec.gov

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>BRANDON E. COPELAND and )<br>E.B. & COPELAND CAPITAL, INC., )<br> )<br>Defendants. ) | No.<br><br>**JURY DEMAND** |

## COMPLAINT

Plaintiff, United States Securities and Exchange Commission (the "SEC"), for its Complaint against Defendants Brandon E. Copeland ("Copeland") and E.B. & Copeland Capital, Inc. ("Copeland Capital") (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1. Copeland has blatantly disregarded an SEC order and continued to repeatedly lie to prospective investors by, among other things, claiming that he is an experienced investment adviser who has launched successful, sophisticated hedge funds. He is not. Through this enforcement action, the SEC seeks to enforce an order it previously issued against Copeland for multiple violations of the federal securities laws, and seeks injunctive relief and civil penalties against him and Copeland Capital for new violations of the federal securities laws.

2. In July 2019, the SEC entered an order (the "SEC Order") in an administrative proceeding that found that Copeland, the co-founder and chief financial officer for two investment advisers, made false and misleading statements to prospective clients and investors. The SEC found that Copeland violated multiple provisions of the Investment Advisers Act of 1940 (the "Advisers Act"), 15 U.S.C. § 80b et seq., ordered Copeland to cease and desist from committing or causing any future violations, barred him from association with any investment adviser or certain other financial institutions, prohibited him from working with or for a registered investment company, and ordered him to pay a $25,000 civil penalty.

3. At the same time that Copeland was agreeing to be bound by the SEC Order that prohibited him from future violations of the Advisers Act, he was making plans to violate the SEC Order, and he has now done so in multiple ways.  Copeland established a new investment adviser, Copeland Capital, through which he solicited prospective investors to participate in a new investment fund (the "EBCC Fund").  In making those solicitations, through the Copeland Capital website (the "EBCC website"), Copeland and Copeland Capital made false and misleading statements about the status and success of the EBCC Fund and Copeland's industry experience, and failed to disclose Copeland's disciplinary history with the SEC.

4. By making these false and misleading statements, Copeland and Copeland Capital committed new violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 promulgated thereunder.  In addition, by engaging in these new violations, Copeland has run afoul of the SEC Order's prohibition on future violations.  Moreover, by establishing the new investment adviser, Copeland also violated the prohibition against him associating with an investment adviser. Copeland has also not paid the $25,000 in civil penalties that were ordered.

5. Based upon Defendants' violations of the Advisers Act, the SEC seeks permanent injunctions against each of the Defendants enjoining them from yet additional future violations of the securities laws, disgorgement of Defendants' ill-gotten gains from the unlawful activity set forth in this Complaint together with prejudgment interest, civil penalties against Defendants pursuant to Section 209(e) of the Advisers Act, and such other relief that the Court may deem appropriate. Based on Copeland's violations of the SEC Order, the SEC seeks additional civil penalties against him and disgorgement of any ill-gotten gains he received from the unlawful activity set forth in this Complaint.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under Sections 209(d), 209(e), and 214(a) of the Advisers Act, 15 U.S.C. §§ 80b-9(d), 80b-9(e), and 80b-14(a).

7. Defendants, directly or indirectly, made use of the mails or any means or instrumentality of interstate commerce in the transactions, practices, or courses of business set forth in this Complaint. Copeland and Copeland Capital offered prospective investors participation in a pooled investment vehicle, the EBCC Fund, by means of the EBCC website that was available on the Internet, which is a means or instrumentality of interstate commerce.

8. Venue lies in the Northern District of Ohio pursuant to Section 214(a) of the Advisers Act, 15 U.S.C. § 80b-14(a). Copeland resides in this district, and transacted the business of Copeland Capital from Copeland's residence in Painesville, Ohio. Many of the acts, practices, transactions, and courses of business alleged in this Complaint occurred with the Northern District of Ohio.

## DEFENDANTS AND RELATED PARTY

9. **Brandon E. Copeland** ("Copeland") is a resident of Painesville, Ohio. Copeland is the founder, sole owner, chairman, and chief investment officer of Copeland Capital; he is both a director and employee of Copeland Capital. He was previously the co-founder and chief financial officer for two investment advisers, Salus L.P. ("Salus") and S.A.I.C. Limited.

10. **E.B. & Copeland Capital, Inc.** ("Copeland Capital") is an investment adviser that Copeland incorporated in New York in June 2019 for the purpose of serving as the general partner to the EBCC Fund.

11. **E.B. & Copeland Capital, L.P.** (the "EBCC Fund") was a limited partnership formed in New York in July 2019. EBCC Fund listed Copeland Capital as its general partner and Copeland as a limited partner. The EBCC Fund was a pooled investment vehicle that held itself out as being engaged primarily in, or proposed to engage primarily in, the business of investing, reinvesting, or trading in securities.

## FACTS

**I.     The SEC Order**

12. On July 17, 2019, based on Copeland's offer of settlement, the SEC issued an order against Copeland, which is titled an Order Instituting Administrative and Cease-and-Desist Proceeding Pursuant to Sections 203(e), 203(f) and 203(k) of the Investment Advisers Act of 1940 and Section 9(b) of the Investment Company Act of 1940, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order (the "SEC Order"). The SEC Order is attached as Exhibit 1.

13. The SEC Order found that Copeland and another individual made false and misleading statements to prospective investors. These false and misleading statements were

made in Form ADV filings, the form used by investment advisers to register with the SEC, by Salus, an investment adviser formed by Copeland, and in a Confidential Offering Memorandum for the private fund managed by Salus and Copeland (the "Salus Fund"). See SEC Order Exhibit 1.

14. The SEC also found that Copeland, through these entities, made false and misleading statements regarding: (i) Salus' assets under management, number of clients, asset allocation, and eligibility for registration as an investment adviser with the SEC; (ii) the Salus Fund's investment strategy and the expertise and experience of its managers; and (iii) the hiring of a specific accountant, legal counsel, prime broker, and custodian for the Salus Fund. In fact, Salus never had any assets under management or clients; Salus was never eligible to register with the SEC as an investment adviser; none of the individuals or entities involved had any relevant experience; and the Salus Fund never operated in the manner described in its offering documents. See SEC Order, Exhibit 1.

15. Based on these factual findings, the SEC found that Copeland willfully violated Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and (2), which make it unlawful for any investment adviser, by use of the means of interstate commerce, directly or indirectly, to (1) "employ any devise, scheme, or artifice to defraud any client or prospective client" or (2) "engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client." See SEC Order, Exhibit 1.

16. The SEC also found that Copeland willfully violated Section 206(4) of the Advisers Act and Rule 206(4)-8 promulgated thereunder, 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8, which make it unlawful for any investment adviser to a pooled investment vehicle to "[m]ake any untrue statement of a material fact or to omit to state a material fact necessary to

make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle" or "engage in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle." See SEC Order, Exhibit 1.

17. The SEC also found that Copeland willfully violated Section 207 of the Advisers Act, 15 U.S.C. § 80b-7, which makes it "unlawful for any person willfully to make any untrue statement of a material fact in any registration application or report filed with the Commission ... or willfully to omit to state in any such application or report any material fact which is required to be stated therein."

18. The SEC also found that Copeland willfully aided and abetted Salus' violation of Section 203A of the Advisers Act, 15 U.S.C. § 80b-3a, which generally prohibits an investment adviser that is regulated or required to be regulated in the State in which it maintains its principal office and place of business from registering with the Commission unless it has assets under management of not less than $25,000,000, or such higher amount as the Commission may, by rule, deem appropriate, or is an adviser to an investment company registered under the Investment Company Act. See SEC Order, Exhibit 1.

19. The SEC issued the SEC Order pursuant to Section 203(f) of the Advisers Act, 15 U.S.C. § 80b-3(f), which authorizes the SEC to bar certain individuals from "being associated with an investment adviser"; Section 203(k) of the Advisers Act, 15 U.S.C. § 80b-3(k), which authorizes the SEC to enter an order requiring a person to "cease and desist from committing or causing" violations of the Advisers Act; and Section 9(b) of the Investment Company Act of

1940, 15 U.S.C. § 80a-9(b), which authorizes the SEC to prohibit a person from working with or for a registered investment company.  See SEC Order, Exhibit 1.

20. Based on these findings, the SEC:  (i) ordered Copeland to cease and desist from committing or causing any violations and any future violations of Sections 203A, 206(1), 206(2), 206(4) and Section 207 of the Advisers Act, and Rule 206(4)-8 promulgated thereunder; (ii) barred Copeland from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization; (iii) prohibited Copeland from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor or, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, or depositor, or principal underwriter, and (iv) ordered Copeland to pay a civil money penalty of $25,000, plus outstanding interest pursuant to 31 U.S.C. § 3717, within fourteen days from the date of the SEC Order.  See SEC Order, Exhibit 1.

**II.     The SEC Seeks to Have the Court Enforce the SEC Order.**

21. Section 209(d) of the Advisers Act, 15 U.S.C. § 80b-9, provides, "Whenever it shall appear to the [SEC] that any person has engaged, is engaged, or is about to engage in any act or practice constituting a violation of . . . any order [instituted under the Adviser Act] . . . it may in its discretion bring an action in the proper district court of the United States . . . to enforce compliance with" that order.

22. As demonstrated below, Copeland violated the SEC Order in numerous ways, in addition to committing new violations of the Adviser Act.

23. The SEC seeks an order from this Court enforcing compliance with the SEC Order.

**III.     Copeland Violated the SEC Order and Copeland and Copeland Capital Committed New Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder.**

24.     The SEC Order barred Copeland, under Section 203(f) of the Advisers Act, from association with an investment adviser without the consent of the SEC.  Section 203(f) of the Advisers Act makes it "unlawful for any person as to whom such an order suspending or barring him from being associated with an investment adviser is in effect to willfully become, or to be, associated with an investment adviser without the consent of the [SEC]."

25.     Copeland's creation of, and association with, Copeland Capital, as detailed below, violated the SEC Order.

26.     The SEC Order also ordered Copeland to cease and desist from committing or causing any violations and any future violations of, among other laws, Section 206(4) of the Advisers Act and Rule 206(4)-8 promulgated thereunder.  As detailed below, Copeland and Copeland Capital engaged in conduct that violated Section 206(4) of the Advisers Act and Rule 206(4)-8 promulgated thereunder.  These violations by Copeland are not only new violations of the securities laws but also violate the SEC Order.

   A.     <u>Copeland Establishes Copeland Capital and the EBCC Fund at the Same Time He's Negotiating a Settlement with the SEC.</u>

27.     Between the date when Copeland signed an offer to settle the SEC's claims against him on May 7, 2019, and the date when the SEC Order was entered by the SEC on July 17, 2019, Copeland took steps to establish a new investment adviser and private fund that were nearly identical to Salus and the Salus Fund.

28.     In June 2019, Copeland incorporated Copeland Capital with New York.  Copeland also secured purported office-sharing space for Copeland Capital at 1330 Avenue of the Americas, New York, New York, and began using that address on various documents.

29. In July 2019, Copeland filed a limited partnership certificate with New York to establish the EBCC Fund. Copeland Capital is listed as the general partner. Copeland also opened a bank account for the EBCC Fund.

30. In or about July 2019, Copeland launched a website for Copeland Capital (the "EBCC website"), which described the company as a hedge fund that specialized in fixed income products, alternative investments, and derivatives. The EBCC website identified Copeland as the Founder, Chairman, and Chief Investment Officer of Copeland Capital who started the "newly launched hedge fund organization as a spur of innovation that emanated from his participation in the co-founding and management of two other private capital management organizations founded respectively in July 2014 and October 2017."

31. These actions to establish Copeland Capital and launch its website demonstrate that Copeland acted in bad faith and never intended to abide by the SEC Order despite his agreement to do so.

32. After the SEC Order was entered on July 17, 2019, Copeland continued to move forward with his plan to manage a new private fund by, among other things: (i) maintaining the EBCC website; (ii) arranging meetings with prospective auditors, prime brokers, fund administrators, and attorneys to discuss the logistics and costs of setting up and running a new private fund; and (iii) seeking information about and making offers for the EBCC Fund to invest in various alternative investments, primarily real property.

    B.    <u>Copeland Capital and Copeland Are Investment Advisers and Copeland is an Associated Person; the Fund is a Pooled Investment Vehicle; and Copeland Violated Section 203(f) of the Advisers Act.</u>

33. Copeland Capital is an investment adviser within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11). Copeland Capital held itself out as an investment adviser and general partner of the EBCC Fund via its EBCC website. EBCC website

described the EBCC Fund as a hedge fund that specialized in fixed income products, alternative investments, and derivatives. Copeland Capital, as the general partner of the EBCC Fund, was in the business of advising the EBCC Fund as to the value of the fixed income products, alternative investments, and derivatives in which the Fund planned to invest. Pursuant to the EBCC Fund's Limited Partnership Agreement, Copeland Capital was entitled to receive 51 percent of the EBCC Fund's income from operations.

34. As the founder, sole owner, sole officer, director and chief investment officer of Copeland Capital, Copeland had complete control over the firm, and Copeland Capital was his alter ego. Copeland expected to receive compensation for his services once the Fund was successful. Copeland was an associated person of investment adviser Copeland Capital.

35. Copeland also acted as an investment adviser to the EBCC Fund in his individual capacity. Copeland promoted himself on the EBCC website as the chief investment officer of the EBCC Fund and held himself out as being in the business of advising the EBCC Fund on investing in securities.

36. The EBCC Fund was a pooled investment vehicle within the meaning of Rule 206(4)(b), 17 C.F.R. § 275.206(4)-8(b). The EBCC Fund was an issuer that proposed to engage primarily in the business of investing, reinvesting, or trading in securities.

37. By associating with an investment adviser, Copeland willfully violated Section 203(f) of the Advisers Act and the SEC Order.

C. Copeland and Copeland Capital Violated the SEC Order and Committed New Violations of the Advisers Act by Making Material Misrepresentations and Omissions on the EBCC Website.

38. In an effort to raise funds for the EBCC Fund, Copeland and Copeland Capital made numerous material false and misleading statements and omissions regarding, among other things, the size and operations of Copeland Capital, Copeland's relevant experience and

connections, and Copeland's disciplinary history as reflected in the SEC Order. These false and misleading statements were published to prospective investors of the EBCC Fund, a pooled investment vehicle, beginning in July 2019, on the EBCC website. Copeland created and controlled all content for the EBCC website.

39. <u>First</u>, Copeland and Copeland Capital made statements on the EBC website that gave the impression that the EBCC Fund was operational and making investments. The website stated that "[f]ixed income products *are* at the heart of our organization" (emphasis added), and, in describing the EBCC Fund's purported long/short strategy, stated that this "proven strategy" serves as "the basis to both our fixed income and equity portfolios." A reasonable investor would have understood from these representations that the EBCC Fund was operational and making investments.

40. Each of these statements was false and misleading because the EBCC Fund had never invested in any fixed income products (or anything else), had never employed a long/short strategy, and Copeland and Copeland Capital had never managed any pooled investment portfolios of any kind.

41. Each of the above representations regarding the operations of Copeland Capital were false and misleading when made, and Copeland and Copeland Capital should have known that their statements were false and misleading. Copeland and Copeland Capital knew the true operations of Copeland Capital.

42. Copeland and Copeland Capital omitted to state material facts that were necessary to render their statements regarding the operations of Copeland Capital not misleading.

43. The above representations and omissions regarding the operations of Copeland Capital were material to prospective investors because, among other things, prospective investors

would want to know whether Copeland Capital was a functioning investment adviser with existing assets.

44. <u>Second</u>, Copeland and Copeland Capital made statements on the EBCC website that gave the impression that the EBCC Fund would have significant assets under management and hundreds of employees around the world. The EBCC website included a "Numbers That Count" section that projected that Copeland Capital would have $150 million in assets under management by the second quarter of 2020, 300 employees by the first quarter of 2021, and four global offices by 2022. A reasonable investor would have understood from these representations that Copeland Capital had a reasonable basis for these projections.

45. Each of these statements was false and misleading because, in July 2019 when Copeland first published the EBCC website, Copeland Capital had no assets under management and the only employee, Copeland, ran the business from his apartment in Ohio, not the New York office building prominently displayed on the website. Although the EBCC website described the "Numbers That Count" as Copeland Capital's short-term goals rather than a past or current status, because Copeland Capital had no startup capital and no access to capital, Copeland and Copeland Capital had no reasonable basis to believe that Copeland Capital could achieve those goals.

46. Each of the above representations regarding the size and operations of Copeland Capital were false and misleading when made, and Copeland and Copeland Capital should have known that their statements were false and misleading. Copeland and Copeland Capital knew the true operations of Copeland Capital.

47. Copeland and Copeland Capital omitted to state material facts that were necessary to render their statements regarding the size and operations of Copeland Capital not misleading.

48. The above representations and omissions regarding the operations of Copeland Capital were material to prospective investors because, among other things, prospective investors would want to know whether Copeland Capital was a large professional organization with millions of dollars under management as opposed to an adviser with one employee, no office, and no assets under management.

49. <u>Third</u>, Copeland and Copeland Capital made statements on the EBCC website that gave the impression that Copeland had significant relevant experience and connections. The EBCC website stated that Copeland "maintains a plethora of relationships within Asia that have enhanced his ability to source, finance, and deliver physical metals to the London Metal Exchange (LME)." The EBCC website also stated that Copeland "maintains several key relationships within the capital markets and insurance industries that support the perpetuity of" Copeland Capital. A reasonable investor would have understood from these representations that Copeland had significant relevant experience and connections.

50. Each of these statements was false and misleading. Copeland had no key relationships within the capital markets or insurance industries and had very limited experience with the LME. He had only completed one "trial run" of a small amount of metals to the LME, which was not profitable, and had no plans to deliver any other metals to the LME.

51. Each of the above representations regarding Copeland's relevant experience and key relationships were false and misleading when made, and Copeland and Copeland Capital should have known that their statements were false and misleading. Copeland and Copeland Capital knew that Copeland did not have the experience or key relationships claimed on the EBCC website.

52. Copeland and Copeland Capital omitted to state material facts that were necessary to render their statements regarding Copeland's relevant experience and key relationships not misleading.

53. The above representations and omissions regarding Copeland's relevant experience and connections were material to prospective investors because, among other things, prospective investors would want to know whether their investment adviser had relevant experience and key relationships.

54. <u>Fourth</u>, Copeland and Copeland Capital failed to disclose the SEC Order on the EBCC website, including that the SEC Order barred Copeland from associating with an investment adviser, which made it illegal for Copeland to start or operate Copeland Capital and the EBCC Fund. In the "About the Founder" section of the EBCC website, Copeland described his past experience with "two other private capital management organizations" without referencing by name the two investment advisers that had been respondents in the SEC Order. A reasonable investor would have understood from these statements that Copeland had prior investment advisory experience and that he had never been disciplined by the SEC.

55. In light of the SEC Order, these statements were misleading.

56. The representations regarding Copeland's experience, without mention of the SEC Order, were misleading when made, and Copeland and Copeland Capital should have known that their statements were misleading. Copeland and Copeland Capital were aware of the SEC Order.

57. Copeland and Copeland Capital omitted to state material facts that were necessary to render their statements regarding Copeland's relevant experience and key relationship not misleading.

58. Information related to Copeland's disciplinary history would be material to any prospective EBCC Fund investor because a prospective investor would want to know that Copeland had been previously found to have engaged in fraud and that, as a result, he was prohibited from running Copeland Capital.

59. As a result of these false and misleading statements and omissions of material fact, Copeland and Copeland Capital violated Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder and also violated the requirement in the SEC Order to cease-and-desist from committing or causing any violations and future violations of these provisions.

**IV. In the Alternative, Copeland Aided and Abetted Copeland Capital's Violations of Section 206(4) of the Advisers Act and Rule 206-4(8) Promulgated Thereunder.**

60. Copeland, by virtue of the conduct described above, knowingly or recklessly provided substantial assistance to Copeland Capital's violations of Section 206(4) of the Investment Adviser Act and Rule 206(4)-8 promulgated thereunder.

**V. Copeland Violated Other Provisions of the SEC Order.**

    A.    <u>Copeland Violated the SEC Order by Failing to Pay Civil Penalties.</u>

61. The SEC Order directed Copeland to pay a civil penalty in the amount of $25,000 within fourteen days of entry of the SEC Order. The SEC Order was entered on July 17, 2019.

62. Copeland has not made any payment pursuant to the SEC Order.

**FIRST CLAIM FOR RELIEF**
**Enforcement of the SEC Order Pursuant to**
**Section 209(d) of the Advisers Act**
**(Against Copeland)**

63. Plaintiff re-alleges and incorporates paragraphs 1 through 62 of the Complaint by reference as if set forth in this Claim.

64. Section 209(d) of the Advisers Act, 15 U.S.C. § 80b-9(d), provides, in part:

> Whenever it shall appear to the [SEC] that any person has engaged, is engaged, or is about to engage in any act or practice constituting a violation of ... any ... order hereunder, ... it may in its discretion bring an action in the proper district court of the United States, ... to enforce compliance with ... any ... order hereunder.

65. By reason of the foregoing, Copeland violated, and unless enjoined, will continue to violate the SEC Order.

## SECOND CLAIM FOR RELIEF
### Violation of Section 203(f) of the Advisers Act
### (Against Copeland)

66. Plaintiff re-alleges and incorporates paragraphs 1 through 62 of the Complaint by reference as if set forth in this Claim.

67. By engaging in the acts and conduct alleged herein, Copeland, while subject to an SEC order barring him from association with an investment adviser, became associated with an investment adviser without the consent of the SEC.

68. Copeland engaged in the above-referenced conduct willfully.

69. By reason of the foregoing, Copeland violated, and unless enjoined, will continue to violate Section 203(f) of the Advisers Act, 15 U.S.C. § 80b-3(f).

## THIRD CLAIM FOR RELIEF
### Violation of Section 206(4) of the Advisers Act and
### Rule 206(4)-8 Promulgated Thereunder
### (Against Both Defendants)

70. Plaintiff re-alleges and incorporates paragraphs 1 through 62 of the Complaint by reference as if set forth in this Claim.

71. At all times relevant to the Complaint, Copeland and Copeland Capital acted as investment advisers to the EBCC Fund, which is a pooled investment vehicle as defined in Rule 206(4)-8(b), 17 C.F.R. § 275.206(4)-8(b). Copeland and Copeland Capital, while acting as investment advisers to a pooled investment vehicle, by use of the mails or any means or

instrumentality of interstate commerce, directly or indirectly, engaged in acts practices or course of business that were fraudulent, deceptive, or manipulative. Copeland and Copland Capital, directly or indirectly:

(a) Made untrue statements of material fact and omitted to state material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading, to investors and prospective investors in a pooled investment vehicle; or

(b) Otherwise engaged in acts, practices or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in a pooled investment vehicle.

72. By reason of the foregoing, Defendants violated, and unless enjoined, will continue to violate Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.

### FOURTH CLAIM FOR RELEIF
**Aiding and Abetting Fraud on Investors in a Pooled Investment Vehicle in Violation of Section 206(4) of the Advisers Act and Rule 206(4)-8 Promulgated Thereunder (Against Copeland)**

73. Plaintiff re-alleges and incorporates paragraphs 1 through 62 of the Complaint by reference as if set forth in this Claim.

74. As a result of the conduct alleged herein, Copeland aided and abetted Copeland Capital's violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 promulgated thereunder by knowingly or recklessly providing substantial assistance to Copeland Capital which, while acting as an investment adviser to a pooled investment vehicle, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, engaged in acts,

practices or courses of business that were fraudulent, deceptive, or manipulative and, directly or indirectly:

    (a) Made untrue statements of material fact and omitted to state material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading, to investors and prospective investors in a pooled investment vehicle; or

    (b) Otherwise engaged in acts, practices or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in a pooled investment vehicle.

75. By reason of the foregoing, Copeland, directly or indirectly, aided and abetted, and unless enjoined, will continue to aid and abet violations of, Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court enter an order:

### I.

Finding that the Defendants committed the violations alleged in this Complaint.

### II.

Enforcing the SEC Order as to Copeland.

### III.

Entering an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, requiring, as provided in the SEC Order, that Copeland:

a. cease and desist from committing or causing any violations and any future violations of Sections 203A, 206(1), 206(2), 206(4), and 207 of the Advisers Act and Rule 206(4)-8 promulgated thereunder;

b. is barred from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization;

c. is prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person or such investment adviser, depositor, or principal underwriter; and

d. pay the civil money penalty of $25,000, plus outstanding interest pursuant to 31 U.S.C. § 3717.

## IV.

Entering an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining each of the Defendants from violating, directly or indirectly, the laws and rules alleged in this Complaint.

## V.

Ordering that each Defendant disgorge any and all ill-gotten gains, together with pre-judgment interest, derived from the improper conduct set forth in this Complaint.

## VI.

Ordering that Copeland pay civil penalties pursuant to Sections 209(e)(1) and 209(e)(4) of the Advisers Act, 15 U.S.C. § 80b-9(e)(1) and (4), for: a) his willful violations of Section 203(f), b) his violations of Section 206(4) of Advisers Act and Rule 206(4)-8 promulgated

thereunder, and c) his violations of a cease-and-desist order entered by the SEC pursuant to Section 203(k) of the Advisers Act all as alleged herein.

## VII.

Ordering that Copeland Capital pay a civil penalty pursuant to Section 209(e)(1) of the Advisers Act [15 U.S.C. § 80b-9(e)(1)] for its violation of Section 206(4) of Advisers Act and Rule 206(4)-8 thereunder as alleged herein.

## VIII.

Ordering such relief as may be necessary for enforcement of any order of this Court as to the civil monetary penalty pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001 – 3308.

## IX.

Ordering that the Court retain jurisdiction as appropriate to assure and effect compliance with the orders entered herein.

## X.

Ordering such other and further relief as may be just and proper.

## JURY DEMAND

The SEC demands a jury in this matter.

Respectfully submitted, March 18, 2020.

/s/ Leslie J. Hughes
LESLIE J. HUGHES (Colo. Bar No. 15043)
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, Suite 1700
Denver, CO 80294
Telephone: (303) 844-1086
Email: HughesLJ@sec.gov